## WHEELER & MOTTER MERCANTILE CO. v. LAMERTON et al.

(Circuit Court of Appeals, Eighth Circuit. October 7, 1925.)

No. 6847.

1. **Corporations ⬥30(5)—Evidence held to make liability of organizers as promoters question for jury.**

In action against incorporators as promoters of corporation for purchase price of goods, evidence to show that the seller knew sale was to one defendant individually, and that other defendants had no agreement or understanding as to purchase of merchandise, *held* to warrant refusal to direct verdict against such defendants.

2. **Corporations ⬥30(4)—By signing articles of incorporation, signer does not make other signers his agents to purchase goods.**

In absence of statutes to the contrary, the signer of articles of incorporation thereby gives no authority to his cosigners, and does not constitute them his agents to purchase goods, or make him liable for goods requisite or convenient for prospective business.

3. **Corporations ⬥30(1)—Subscription to stock or signing of articles does not make subscriber promoter.**

That one signs and verifies articles of incorporation and subscribes for capital stock in proposed corporation does not make him a promoter, or subject him to liability as such.

4. **Evidence ⬥253(1), 317(2)—In action to hold subscribers liable as promoters, evidence of statements of one excluded as to others.**

In action by seller of goods against alleged promoters of corporation, testimony that one defendant had told witness that other defendants were heavily interested in the corporation *held* properly excluded, as irrelevant, hearsay, and immaterial, in absence of offer to prove communication of statement to plaintiff.

5. **Evidence ⬥107—In action to hold defendants liable as promoters, evidence as to financial reputation of defendants held properly excluded.**

In action by seller of goods against alleged promoters of corporation, testimony as to financial reputation of defendants *held* properly excluded, as irrelevant on issue whether such defendants authorized codefendant to buy goods,

or had notice or knowledge that he was buying them.

6. **Appeal and error ⬥1058(1)—Erroneous exclusion of evidence harmless where facts otherwise proved.**

The erroneous exclusion of evidence is not prejudicial where the facts are conclusively proved by other evidence received.

7. **Evidence ⬥471(30)—Witness may testify directly that there was no agency or authority.**

Where the question of agency or authority depends upon complicated facts, the witness must state facts and not conclusions, but where there are no facts from which such agency or authority can be deduced, a witness who knows this absence of facts may properly testify that there was no agency or authority.

8. **Trial ⬥89—Evidence in rebuttal held properly stricken, where not responsive to testimony sought to be contradicted.**

Where defendant testified positively that he never signed corporate note as vice president, testimony for plaintiff that such note was offered in settlement of plaintiff's account was properly stricken, where there was no proof. or offer to prove, that such note was ever signed by defendant.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action by the Wheeler & Motter Mercantile Company against W. E. Lamerton and others. Judgment for plaintiff against one defendant only, and plaintiff brings error. Affirmed.

Claude Nowlin, Forrest L. Hughes, and M. S. Singleton, all of Oklahoma City, Okl., for plaintiff in error.

Simons, McKnight & Simons, of Enid, Okl., for defendant in error Lamerton.

Horace G. McKeever, William L. Moore, and Roy J. Elam, all of Enid, Okl., for defendant in error Buzzard.

Before SANBORN and KENYON, Circuit Judges, and SCOTT, District Judge.

SANBORN, Circuit Judge. The Wheeler & Motter Mercantile Company, a corporation, brought an action at law against J. E. Reed, W. E. Lamerton, and F. B. Buzzard for $4,026.67, the unpaid balance of $9,300.97, the purchase price of goods it sold and delivered to J. E. Reed in July and August, 1922, for the Reed Mercantile Company, a corporation organized and incorporated in August, 1922. In its complaint the plaintiff alleged that the three defendants, acting in the capacity of promoters of the proposed Reed Mercantile Company, between June 20 and June 24, 1922, purchased from it for that company these

goods for the agreed price of $9,300.97; that the plaintiff delivered them at the store building of the proposed Reed Company; that the defendants signed and acknowledged articles of incorporation of that company on June 7, 1922; that on August 8, 1922, they filed these articles, which named themselves as directors in the office of the Secretary of State and "accepted the charter from the Secretary of State in form and manner as provided by law"; that from June 7, 1922, until after the goods were purchased, they held themselves out as promoters and directors of the Reed Mercantile Company, and the plaintiff and its salesman relied on that fact in the sale of the goods; that the defendants did not in good faith perfect the organization of the Reed Company, sell any substantial amount of its capital stock, or provide money to pay for these goods; and that no part of the purchase price thereof had been paid, except $5,636.-70, which the plaintiff received as its share of the proceeds of the sale of the property of the Reed Company by the trustee for its creditors some time in the autumn of the year 1922.

The defendant Buzzard by his answer admitted that the three defendants signed the articles of incorporation of the Reed Mercantile Company, which were presented to the Secretary of State, and on which a corporate charter was issued; denied that he was a promoter of that company, or had anything to do with its organization, except that at the solicitation of defendant Reed he subscribed and paid for $200 worth of the capital stock of that company and signed the articles of incorporation; denied that he had any knowledge of or anything to do with the purchase of any goods from the plaintiff or with the management of the Reed Company. He alleged that, immediately after the Secretary of State issued the charter, a full board of directors, president, secretary, and treasurer of the Reed Company were elected by the stockholders, but that he was never present or represented by proxy at any meeting of the stockholders or board of directors of that company. The answer of the defendant Lamerton was a general denial.

The plaintiff, by its reply to the answer of defendant Buzzard, denied that any substantial amount of subscriptions to the capital stock of the Reed Company was obtained, and alleged that all the goods sold by the plaintiff were ordered by the promoters and directors of the Reed Company after the date (June 7, 1922) of the execution of the articles of incorporation, and before August 8, 1922, when the articles were filed and the charter was issued, but that a large portion thereof was shipped on and subsequent to August 8, 1922.

The case was tried to a jury. At the close of the evidence counsel for the plaintiff moved the court to instruct the jury, first, to return a verdict against the defendant Reed; second, to return a verdict against the defendant Lamerton; and, third, to return a verdict against the defendant Buzzard. The court granted the first motion, denied the second and third motions, and the plaintiff excepted.

Thereafter the court charged the jury, first, that Lamerton and Buzzard, by signing the articles of incorporation of the Reed Mercantile Company, necessarily became promoters of that corporation; second, that if they found from the evidence that, before the articles were filed with the Secretary of State and the charter was issued, either Lamerton or Buzzard had any agreement or understanding with Reed that before such filing and issue Reed was to order or obtain for the proposed Reed Mercantile Company or for its expected business any goods or merchandise, or had any knowledge or notice that he was so ordering or obtaining them, or had so ordered or obtained them, they should return their verdict against him or them; but, third, that if they found from the evidence that neither Lamerton nor Buzzard had any such agreement, understanding, notice, or knowledge they should render their verdict in their favor. The plaintiff took no exception to this charge, and pursuant to it the jury returned a verdict in favor of Lamerton and Buzzard, and judgment accordingly was entered.

The chief complaint of counsel for the plaintiff of the trial of this case is that the court below refused to instruct the jury to return a verdict against Lamerton and Buzzard. Under this complaint many interesting questions relating to the liabilities of signers of articles of incorporation and of other parties for the purchase of goods, ordered before incorporations were completed by them, their associates, or others, have been elaborately discussed and reviewed, which are not raised by this record, and which it is unnecessary to consider in order to answer the questions presented by the denial of the motions to instruct the jury to return verdicts against Lamerton and Buzzard. As no exception was taken by the plaintiff to the charge of the court under which the verdicts were rendered, and as, in

addition to its general statement set forth above, the court near the close of its charge also expressly and finally instructed the jury that if they found that Lamerton and Buzzard signed the articles of incorporation, and if they did not find from a preponderance of the evidence that they had any agreement or understanding with Reed that he was to proceed to obtain goods and merchandise to equip the business of the Reed Mercantile Company, but only intended that such goods should be obtained after the incorporation of the company was completed, they should find a verdict in their favor, and the jury found for them, the only question presented by the denial of the motions to direct verdicts against them is: Was there any substantial evidence when the motions were made that Lamerton and Buzzard had no such agreement, understanding, notice, or knowledge? for, if there was such evidence, it was the undoubted duty of the court to submit the issue to the jury.

At the close of the evidence these facts were admitted or conclusively established: In the spring and summer of 1922 defendant Reed had been a salesman for a corporation or company engaged in selling dry goods at Enid, Okl. He, his brother, and one Underwood were anxious to form, and conceived and promoted a plan to organize and operate, a corporation under the name of the Reed Mercantile Company to buy and sell dry goods at Enid, and they actively promoted the formation and organization of such a corporation. The defendants Lamerton and Buzzard were influential and wealthy citizens of Enid, who had no interest in a mercantile business of that nature. Lamerton was a physician and surgeon; Buzzard was a farmer and dealer in real estate. Reed prepared or caused the preparation of the articles of incorporation of the Reed Mercantile Company, and solicited numerous parties to subscribe for its capital stock. After repeated solicitations and refusals, he obtained from defendant Buzzard at some time prior to June 7, 1922, his subscription for $200 worth of the capital stock of the proposed corporation, for which Buzzard subsequently paid $200 on August 24, 1922, after the articles of incorporation had been filed on August 8, 1922, and after, at a meeting of the stockholders, of which he had no notice and which he did not attend, on August 20 or 21, 1922, a president, secretary, and board of directors of the Reed Mercantile Company had been elected. After repeated solicitations, and on the personal promise of Reed that he would relieve

him from all further service so soon as the articles of incorporation were filed, Buzzard signed and verified the articles of incorporation of the Reed Mercantile Company on June 7, 1922, and delivered them to him upon his promise to file them. Defendant Lamerton never subscribed for any stock. Reed solicited him to sign the articles of incorporation to assist him in obtaining a charter, and he did so on June 7, 1922, and turned the articles over to him, and relied upon him to file them. One day, the last of August or the 1st of September, he went into the store then occupied by the Reed Mercantile Company to buy a pair of overalls, and Reed told him that they had completed the organization and elected him vice president of the corporation, and he replied that he was not a member of the corporation or a stockholder.

On June 20, 1922, Reed, at the solicitation of Robert Anderson, a salesman of the Wheeler & Motter Mercantile Company, ordered from it for "Reed Mer. Co., Enid, Okl., a new firm going to start here," as Mr. Anderson wrote the plaintiff on that day, the goods for the unpaid part of the purchase price of which the plaintiff seeks to recover of Lamerton and Buzzard. In that letter Anderson directed the plaintiff to write Mr. Reed, "and tell him how much per cent. for anticipating," and that Reed wanted the goods in Enid by July 15, and that they ought to be shipped about July 1. The plaintiff on June 22 accepted the order. On July 5, 1922, it wrote Reed that it would appreciate it if he would advise it if he had perfected the organization of the company, or if it had been incorporated, and if he still desired to have the goods shipped so that they would reach Enid by July 15. On July 8 Reed answered: "On account of two of our people being in the hospital we have been unable to complete our organization * * * We would like to have the merchandise in the house by the 20th at the latest, and I am sure that it will be impossible for us to complete our organization and give you a statement by that time. * * * *" On July 11, 1922, the plaintiff wrote Reed that it had received his letter of July 8, and had given instructions to ship his goods without delay, so that they would reach him by July 20, 1922, and all or nearly all of the goods were received in Enid before the articles of incorporation were filed on August 8, 1922.

Reed testified that, when he first conceived the idea of organizing a company like the Reed Company, he never called

Lamerton or Buzzard into conference; that it was his own individual proposition; that he, his brother, Underwood, and others of his friends worked to get subscribers to the capital stock and were promoters of the corporation, but that Lamerton and Buzzard did not belong to this group, and never worked to advance its interests; that neither Lamerton nor Buzzard was present at or had notice of the meeting of the stockholders on August 20 or 21 to complete the organization and elect the officers of the corporation; that neither of them had anything to do with the promotion or organization of the corporation, directly or indirectly, except signing their names to that application for a charter; that after Mr. Buzzard signed the articles he never asked him to take any stock, and never talked with him any more, because Buzzard had told him that he did not want to have anything to do with it, and would not have anything to do with it; that neither Lamerton nor Buzzard had anything to do with the ordering of the goods from the plaintiff, when they were ordered; and that the goods were in Enid before they knew he had ever ordered them, but that he told Lamerton, at one time, "* * * we would be ready to start in a short time. Q. Ready to open with a stock of goods and go to doing business pretty soon? A. And that the goods were bought. Q. You told him the goods were bought? A. Yes, sir; but he didn't know anything about it. Q. He could hear, couldn't he? A. He might have heard it. Q. If you told him about it, he knew about it, didn't he? A. Yes, sir. Q. That was before you opened the store, wasn't it? A. Yes; I presume I told him that before I opened the store. The Court: You hadn't filed your articles yet, had you? A. No, sir."

Lamerton testified that he never gave Reed any authority to represent him or any one else in the buying of any goods; that he never knew Reed was buying any goods of the plaintiff; that in the conversation in reference to the signing of the articles of incorporation no authority was given Reed to use those articles for any other purpose than for the obtaining of a charter. Buzzard testified that Reed never consulted him about buying the goods of the plaintiff; that he did not know he was going to buy them before the articles were filed, or before the organization was completed; that no one ever came to see him about that; that he never authorized Anderson or Reed to use his name in connection with the promotion of the Reed Mercantile Company; that

he first discovered that Reed had actually started a store on August 4, 1922, when he or one of his representatives came in for his subscription to the stock, and he paid him $200.

[1] The established facts and the testimony which have been recited leave no doubt that at the close of the trial there was such substantial, if not conclusive evidence that the Wheeler & Motter Mercantile Company knew that its sale was to Reed, and not to any other person, organized firm, or corporation, and, second, that neither Lamerton nor Buzzard ever had any agreement or understanding with Reed that the latter was to proceed to obtain goods or merchandise to equip the business of the Reed Mercantile Company, or for it, before its articles of incorporation were filed, and that they had no notice or knowledge he was so doing before they were filed, that a refusal on plaintiff's motion to submit the issues on these propositions to the jury would have been manifest error. The denial of the motions to instruct the jury to return verdicts against Lamerton and Buzzard was clearly right.

[2, 3] In the absence of statutes to the contrary, the signer of articles of incorporation thereby gives no authority to his cosigners, and does not constitute them, or any of them, his agent or agents, prior to the conclusion of the incorporation, to purchase for the proposed corporation, for him or them, or to make him or them liable for goods, merchandise, or other property requisite or convenient for the expected business of the proposed corporation. The rule, caveat emptor, governs vendors under such circumstances. The authority or agency granted to the cosigners is limited to the performance of the acts necessary to perfect the organization of the corporation. Nor does the fact that one signs and verifies the articles of incorporation and subscribes for capital stock in a proposed corporation make him a promoter thereof, within the legal significance of that equivocal and ambiguous term in cases of this character. Benton v. Minneapolis Tailoring & Manufacturing Co., 73 Minn. 498, 76 N. W. 265, 267; Farmers' State Bank v. Kuchs, 163 Mo. App. 606, 147 S. W. 862; Mitchell v. Jensen, 29 Utah, 346, 81 P. 165; Rutherford v. Hill, 22 Or. 218, 29 P. 546, 17 L. R. A. 549, 29 Am. St. Rep. 596.

[4] The plaintiff called as a witness W. H. Day, who testified that he owned the building where the Reed Mercantile Company opened a place of business in Enid, and to

the relative location of that building to the offices of Lamerton and Buzzard, and asked him if he was advised by Reed as to the interests of Lamerton and Buzzard in connection with that business, and offered to prove by his testimony that his answer to the question would be in the affirmative; that he would further testify that Reed informed him that each of them was interested to the extent of $10,000, and that Reed gave him the information after the articles of incorporation were signed, and before they were filed. The court sustained the objections of Lamerton and Buzzard to this offer, on the ground that the communication of that information to Day, without any offer to prove its communication to the plaintiff, was irrelevant to any issue between it and Lamerton and Buzzard; that there was no offer to prove that the latter ever authorized or were bound by such a communication by Reed; that it was hearsay and immaterial. This ruling is assigned as error by counsel for the plaintiff; but the statement of the objection and the ruling renders comment or discussion of this assignment useless.

[5, 6] The first witness called by the plaintiff was Robert Anderson, who for the plaintiff sold the goods to Reed for the proposed new firm or corporation. He testified, over the objections and exceptions of Lamerton and Buzzard on the ground that such evidence was incompetent and irrelevant, that in the negotiations for the purchase Reed told him that Lamerton and Buzzard put up most of the $38,000, which Reed told him had been paid in for the proposed Reed Company; that they were very prominent men in Enid; that he elaborated as to the wealth and prominence of Lamerton and Buzzard; that he inquired about their financial standing in the community, and found it was the best in the town; and that he wrote to the plaintiff, in the letter he sent with the order of June 20, 1922, that the main stockholders were Lamerton and Buzzard, rich men in Enid. The next witness called by the plaintiff was G. A. Carter. After he had testified that in the summer of 1922 he made a written contract with Reed to construct shelving in a building in Enid for the proposed Reed Company, plaintiff's counsel asked him if he knew "what reputation the defendants Lamerton and Buzzard had in this community (Enid) in the spring and summer of 1922, as to being men of means and financial responsibility?" and the court sustained the objection of Lamerton and Buzzard that the offered testimony was

incompetent, irrelevant, and immaterial, because there was no proof or offer to prove that the plaintiff knew of such a reputation. Counsel complain of this ruling. But the proposed testimony had no relevancy to the decisive issue in the case, to the question whether or not Lamerton and Buzzard authorized Reed to buy the goods, or had any notice or knowledge that he was buying them, before the articles were filed. There was therefore no error in excluding it, and if its exclusion had been error it would have been neither prejudicial to the plaintiff nor fatal to the trial, because the fact was conclusively proved by other witnesses that Lamerton and Buzzard were and had the reputation of being wealthy and influential men in the community in Enid where they lived. There was no error in the ruling here challenged.

The next complaint is that the court erred in overruling the objections to the following questions and answers:

"Q. (to Mr. Reed): Did Dr. Lamerton or Frank Buzzard, at any time or place, have anything to do with the promotion or organization of this corporation? A. No, sir.

"Q. Directly or indirectly, other than signing their names to that application for a charter? A. No, sir.

"Mr. Nowlin (for plaintiff): Objected to as calling for a conclusion.

"By the Court: Overruled.

"Mr. Nowlin: Exception.

* * * * * * *

"Q. (to Mr. Lamerton): Did you ever give him (Mr. Reed) any authority to represent you or any one else in the buying of any goods?

"Mr. Nowlin: Objected to as calling for a legal conclusion.

"The Court: Overruled.

"Mr. Nowlin: Exception.

"A. I did not."

[7] It is true that, where the question of agency or authority is conditioned by many and complicated facts, the witness must state the facts and leave the court or jury to deduce the conclusion, and that he is incompetent to testify to the question of authority or agency; but, where there are no facts from which such agency or authority justly can be deduced, a witness who knows this absence of facts may lawfully testify that there was no agency or authority, and there was no error in the rulings here challenged. Larkin v. Carstens Pkg. Co., 80 Or. 104, 156 P. 578.

[8] Finally, after Lamerton, over the objection of counsel for the plaintiff, had testified that he never signed Reed Mercantile Company, by himself as vice president, to a note for over $9,000, and offered it in settlement of the plaintiff's account, plaintiff's counsel, over the objection and exception of defendant Lamerton, introduced in evidence the testimony of Mr. Tuohy to the effect that he was offered by Mr. Reed such a note in settlement of the plaintiff's account. Thereupon the court granted a motion of the defendant Lamerton to strike out the evidence relative to this note, on the ground that there was no proof or offer to prove that such a note was ever signed by Lamerton, and Lamerton himself had testified that he never did sign such a note. This ruling is assigned as error. But the assignment is clearly baseless.

The judgment below must be affirmed; and it is so ordered.